UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PATRICIA MCKAY | * | CIVIL ACTION |
| | * | |
| Plaintiff, | * | NO. 08-4337 c/w 09-6110 |
| | * | |
| VERSUS | * | SECTION  "J" (5) |
| | * | |
| UNITED STATES OF AMERICA, ET AL | * | |
| | * | |
| Defendant. | * | |
| | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***\*

MEMORANDUM IN SUPPORT OF
MOTION TO LIMIT THE AD DAMNUM

**MAY IT PLEASE THE COURT:**

Plaintiff, Patricia McKay ("Plaintiff" or "McKay"), initially filed an administrative claim

with the United States Army Corps of Engineers ("Corps") stating a sum certain or *ad damnum*[1]

of $25,000.  After the Corps denied her administrative claim, McKay sought to increase the *ad*

*damnum* by amending her administrative claim.  However, this attempt was untimely because the

agency had already denied her claim and because she had already filed this lawsuit.  It seems

likely that McKay will seek more than the *ad damnum* during trial, so the United States seeks to

preemptively limit her recoverable damages to her initial *ad damnum*, or $25,000.  Because the

Plaintiff will not be able to show that an increase is justified by either newly discovered evidence

or intervening facts within the meaning of 28 U.S.C. § 2675(b), her damages should be capped at

$25,000.

---

[1] "An *ad damnum* clause is '[a] clause in a prayer for relief stating the amount of damages
claimed.'" Singletary v. U.S., 2006 WL 3240769, *1 n.1 (E.D. La. 11/6/06) (quoting Black's
Law Dictionary 40 (8ᵗʰ ed. 2004).

I.      FACTUAL BACKGROUND

   A. <u>McKay's Administrative Claim History</u>

   This is a lawsuit filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, arising out of a motor vehicle accident on July 9, 2007.  McKay alleges that Dennis Stegmeier, a federal employee acting within the course and scope of his federal employment at the time of the accident, while driving a rental car owned by Hertz, negligently disregarded a red light and collided with McKay's vehicle.

   On July 8, 2008, McKay submitted a Standard Form 95 ("SF-95") stating her administrative claim against the Corps.  <u>See</u> Exhibit 1, Plaintiff's SF-95.  Plaintiff stated a sum certain of $25,000 for all personal injury damages in Box 12b of her SF-95 and failed to list anything for total in box 12d.  The Corps denied Plaintiff's administrative claim on September 11, 2008.  <u>See</u> Exhibit 2, denial of Plaintiff's administrative claim.  Specifically, the Corps denied Plaintiff's administrative claim because under a rental agreement between Hertz and the federal government, Hertz was required to maintain insurance coverage to protect the federal government and its employees using rental vehicles "against liability for personal injury, death, and property damage arising from the use of the vehicle" in the amount of $100,000 for each person, $300,000 for all persons, and $25,000 in property damage.  <u>See</u> Exhibit 2.  The denial letter noted that McKay had six months to seek reconsideration of her administrative claim by the agency or to file a lawsuit in federal court.  <u>See</u> Exhibit 2.

   McKay had already filed the present lawsuit in the First City Court for the City of New Orleans on February 13, 2008, which was removed to this Court on September 8, 2008.  <u>See</u> Rec. Doc. 1.  On March 3, 2009 McKay sought to amend her administrative claim to increase her *ad damnum* from $25,000 to $530,000.  <u>See</u> Exhibit 3, letter and attempted amendment of SF-95.

On March 10, 2009 (within the six-month time limit) she sought reconsideration of her denied claim.  See Exhibit 4, request for reconsideration.  On June 29, 2009 the Corps responded to both the attempted amendment of her SF-95 and her request for reconsideration of her initial claim. See Exhibit 5, letter denying amendment and reconsideration.  The Corps denied McKay's attempt to amend her original claim to increase the *ad damnum* from $25,000 to $530,000 because the final agency action had already taken place so her attempted amendment was untimely under 28 C.F.R. § 14.2(c).  See Exhibit 5.  The Corps denied her original claim on reconsideration because it was "no longer amenable to administrative action" because of the ongoing litigation.  See Exhibit 5.

## B.  McKay's medical history

McKay attached a number of documents to her July 8, 2008 administrative claim, including July 9, 2007 medical records from East Jefferson General Hospital ("EJGH") emergency department and a January 21, 2008 report and billing records from Total Health Clinics.[2]  The emergency department records reflect that McKay was seen for neck and left shoulder pain on the day of the accident.  See Exhibit 6, excerpts of EJGH medical records.  X-rays were taken of both her left shoulder and cervical spine and were negative except for some degenerative changes in both areas.  She was diagnosed with both a cervical strain and left shoulder strain and discharged.  See Exhibit 6.  She was prescribed Vicodin to take as directed was told to follow up with an orthopaedist.  See Exhibit 6.

McKay was first treated at Total Health Clinics on July 26, 2007 and was treated a total of 29 times, the last on January 14, 2008.  See Exhibit 7, Total Health Clinics medical records.

---

[2] Also included were a copy of the State of Louisiana Uniform Motor Vehicle Traffic Crash Report and a copy of the contractual agreement between McKay and her attorney.

In addition to her physical therapy treatment, Dr. Edmond Wood noted in the "Clinical Comments" section of the report that:

> It is felt, considering past experience with similar cases, that this weakness may very well predispose these areas to further trouble from aggravation or trauma, which might not have otherwise bothered the patient prior to the accident. **There is also the possibility of discovering more unfavorable developments in the future**.

See Exhibit 7 (emphasis added). These were the only medical records submitted with the July 8, 2009 administrative claim.

After filing her administrative claim, McKay underwent further testing and treatment. She apparently returned to Total Health Clinics on May 20, 2008 for additional neck treatments and was last seen on July 14, 2008. See Exhibit 8, supplemental medical records from Total Health Clinics. However, these medical records were not provided to the Corps for consideration with McKay's administrative claim and were not received until March 3, 2009.

On September 24, 2008 McKay was referred to Magnolia Diagnostics for an MRI of her left shoulder and neck, which were performed on October 6, 2008. See Exhibit 9, Magnolia Diagnostics medical records. The MRI revealed evidence of a torn rotator cuff and a tendon tear in her left shoulder, as well as a herniation at C5/6 in her neck. See Exhibit 9. These MRI's were performed after the Corps' denial of McKay's administrative claim and were not provided to the Corps until March 3, 2009.

In addition to the above-described medical records that were sent to the Corps either with McKay's original administrative claim or with the attempted amendment, two other medical records have been obtained through discovery that were generated prior to the Corps' denial of McKay's administrative claim. McKay was seen by Dr. Terry Habig, and orthopedist with Southern Orthopaedic Specialists, on July 18, 2007. See Exhibit 10, report of Dr. Habig. Dr.

4

Habig diagnosed cervical and lumbar sprains and a left shoulder sprain/strain.  See Exhibit 10.

Also, two pages of medical records from Total Health Clinics were not sent to the Corps as part

of the administrative claim (follow-up examinations dated June 17, 2008 and July 15, 2008).  See

Exhibit 11.

McKay has subsequently undergone arthroscopic shoulder surgery to repair the rotator

cuff in her left shoulder and has seen an orthopedist regarding her neck pain.

## II.      LAW AND ARGUMENT

As a jurisdictional prerequisite to suit under the FTCA, a plaintiff must first exhaust her

administrative remedy before bringing a lawsuit.  28 U.S.C. § 2675(a); Dickerson ex rel.

Dickerson v. United States, 280 F.3d 470, 475 (5th Cir. 2002).  Written notice of a "sum certain"

must be presented to the appropriate federal agency within a two-year period after the alleged act

or omission occurred to enable the agency to begin investigating the claim, and the plaintiff bears

the burden of establishing timely and proper presentment.  28 U.S.C. §2672; 28 C.F.R. §14.2(a);

Montoya v. U.S., 841 F.2d 102, 105 (5th Cir. 1988); All State Financial Co. v. Parish of

Jefferson, 2003 WL 1873090, *1 (E.D. La. 4/9/03) (Berrigan, J.).   Plaintiff satisfied this

requirement by filing her July 8, 2008 administrative claim stating a sum certain of $25,000.

The purpose of the statute requiring notice and a "sum certain" (or *ad damnum*) is to

permit the federal government to be aware of its maximum exposure to liability and damages,

and federal agencies will be in a position to fairly evaluate claims and to make intelligent

decisions regarding settlement.  Lebron v. U.S., 279 F.3d 321, 330-331 (5th Cir. 2002); Low v.

U.S., 795 F.2d 466, 470-471 (5th Cir. 1986); Martinez v. U.S., 780 F.2d 525, 530 (5th Cir.

1986).  Moreover, this sum certain allows the agency to evaluate whether the settlement will

require the approval of the Attorney General under 28 U.S.C. § 2672 and provides the agency

with the information necessary to act on the claim within six months pursuant to 28 U.S.C. § 2675(a).   Molinar v. U.S., 515 F.2d 246, 249 (5th Cir. 1975).   The preferred method for presentment of notice and a sum certain is by presentment of an SF-95.   The filing of a SF-95 constitutes a "claim."   The amount listed in the SF-95 is a "sum certain" within the meaning of the requirement of 28 U.S.C. § 2675 and 28 C.F.R. §14.2(a).   Dickerson, 280 F.3d at 475- 76.

The FTCA prohibits plaintiffs from recovering damages in excess of the "sum certain" amount presented to the federal agency, subject to two exceptions: (1) where there is newly discovered evidence that was not reasonably discoverable at the time the claim was presented to the federal agency or (2) upon allegations and proof of intervening facts relating to the amount of the administrative claim.   See 28 U.S.C. 2675(b) [3]; Dickerson, 280 F.3d at 475- 76; Lebron, 279 F.3d at 330; Low, 795 F.2d at 470.

Plaintiff bears the burden of proving that the new information could not have been discovered through the exercise of reasonable diligence.   Dickerson, 280 F.3d at 475- 76; Lebron, 279 F.3d at 330; Low, 795 F.2d at 470.   In Low, the Fifth Circuit clarified that "new information cannot surmount the bar created by §2675(b) if the information merely concerns the precision with which the nature, extent or duration of a claimant's condition can be known." Lebron, 279 F.3d at 330 (citing Low at 470-471).

In Dickerson, the Fifth Circuit looked to its previous decision in Low, requiring a plaintiff to satisfy a two-part test in order to meet one of the two exceptions in 28 U.S.C. § 2675(b).   The test consists of subjective and objective components: (1) whether the specific

---

[3] The complete text of 28 U.S.C. § 2675(b) reads: "Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim."

injuries were known by plaintiff at the time that the administrative claim was filed; and (2) whether the plaintiff could have made out the worst-case scenario based on the severity of the injuries that were known.  Dickerson, 280 F.3d at 475-476 (citing Low, 795 F.2d at 470, and Reilly v. U.S., 863 F.2d 149, 172-73 (1st. Cir. 1988)).  "The second prong also contains an element that the 'allegedly newly discovered evidence or intervening facts must not have been reasonably capable of detection at the time the administrative claim was filed.'" Dickerson, 280 F.3d. at 476 (citing Low, 795 F.2d at 470).  "If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed."  Salcedo-Albanez v. U.S., 149 F.Supp.2d 1240, 1243 (S.D. Cal. 2001) (quoting Lowry v. U.S., 958 F. Supp. 704, 711 (D. Mass. 1997)).

The term "reasonably discoverable" has not been specifically defined.  However, the Fifth Circuit has held that the term requires a plaintiff to exercise reasonable diligence in determining both the nature of the injury and its probable ramifications.  See Lebron, 279 F.3d at 330.  Thus, a plaintiff must do more than rely on present knowledge or ignorance.  Instead, she must make an affirmative effort, based on what she does know, to predict the course of the injury.  Moreover, the effort must be a reasonable one.

The policy behind the administrative cap on damages was explained by the Fifth Circuit:

> [I]f the exact nature, extent and duration of each recognized disability must be known before § 2675(b) will be given effect, that section will be rendered useless; and the government will be unable to evaluate any claim made against it without the threat that, if it does not settle, its liability may increase substantially.

Low, 795 F.2d at 471.  Requiring the plaintiff to guard against a "worst-case scenario" in preparing her claim gives the Government full notice of its maximum potential liability in the

7

case.   This encourages settlement of FTCA cases in accordance with the statute's purposes.

Dickerson, supra, (citing Low, 795 F.2d at 470-471, and Lebron, 279 F.3d at 330-31).

In this case, McKay cannot satisfy the objective component of the test.   With the clear

medical information Plaintiff and her attorney had at the time the administrative claim was filed,

they could have made out their worst case scenario regarding the damages in this case.   Her torn

rotator cuff and herniated C5/6 disc were clearly "reasonably capable of detection at the time the

administrative claim was filed."   Dickerson, 280 F.3d at 476 (citing Low, 795 F.2d at 470).   Prior

to filing her administrative claim, McKay had been diagnosed with a strained left shoulder and a

strained cervical spine by Dr. Terry Creel with EJGH, see Exhibit 6, Dr. Terry Habig with

Southern Orthopaedic Specialists, see Exhibit 10, and Dr. Edmond Wood with Total Health

Clinics, see Exhibit 7.   Dr. Wood specifically told McKay that while he was only diagnosing her

with a cervical strain and left shoulder strain:

> It is felt, considering past experience with similar cases, that this weakness **may very well predispose these areas to further trouble** from aggravation or trauma, which might not have otherwise bothered the patient prior to the accident.   **There is also the possibility of discovering more unfavorable developments in the future**.

See Exhibit 7 (emphasis added).   Thus, six months before filing her administrative claim, Dr.

Wood informed the Plaintiff that her worst-case could be worse than her present diagnosis and

that she may experience future problems.   Moreover, McKay was actually receiving physical

therapy from Dr. Wood at the time she filed her administrative claim, but these medical records

were not provided to the Corps until well after it had denied her administrative claim.   See

Exhibit 3 (attempted amendment to the SF-95) and Exhibits 8 and 9 (medical records submitted

with attempted amendment).

McKay's MRI revealing her rotator cuff tear and her C5/6 herniation were taken a mere three months after filing her administrative claim – 18 months after the accident and well within the statutory two-year deadline for filing an administrative claim.  McKay could have waited to file her administrative claim until after her MRI and based her *ad damnum* on a more complete diagnosis.  She could have stated a higher *ad damnum* based on Dr. Wood's warning of "unfavorable developments in the future" and her knowledge that she was continuing to experience left shoulder and neck pain a year after the accident.  These decisions were entirely within Plaintiff's control, not the federal governments, as she was the master of her treatment, the filing of her administrative claim, and the contents of her administrative claim.

To permit an increase in the *ad damnum* would defeat the purpose of the administrative cap.  28 U.S.C. § 2675 (b).  Moreover,

> As between prospective defendant and prospective plaintiff, the latter is in by far the better position to determine the worst-case scenario or, if uncertain, to paint the picture as bleakly as reason permits and conscience allows.  If a plaintiff misjudges, as to matters known or easily deducible when her claim is filed, it seems more equitable for her to bear the burden of miscalculation than to impose it on the sovereign.

Salcedo-Albanez v. U.S., 149 F.Supp.2d 1240, 1244-1245 (S.D. Cal. 2001).  If a claim ceased to be sum certain, the *ad damnum* limitation would be extinguished and the sovereign's waiver of immunity would be unduly enlarged.   McKay's rotator cuff tear and disc herniation were clearly diagnoses that were "reasonably capable of detection" when the administrative claim was filed, because they were ultimately diagnosed with an MRI three months after the claim was filed. The nature and extent of Plaintiff's injuries and the resulting damages were evident or could reasonably have been determined prior to the filing of her administrative claim, and certainly

before her administrative claim was denied.  For these reasons, her damages should be capped at

the *ad damnum* stated in her administrative claim - $25,000.

## CONCLUSION

WHEREFORE, the United States prays that its motion to limit the *ad damnum* be granted

and that Plaintiff be limited in recovery to the amount asserted in her administrative claim filed

with the U.S. Army Corps of Engineers pursuant to 28 U.S.C. § 2675(b).

Respectfully submitted,

JIM LETTEN
UNITED STATES ATTORNEY


/S/ JASON M. BIGELOW_____
JASON M. BIGELOW (# 29761)
Assistant United States Attorney
Hale Boggs Federal Building
500 Poydras Street, 210B
New Orleans, Louisiana 70130
Telephone:  (504) 680-3025


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon counsel for

all parties by ECF, facsimile, or mailing the same to each, properly addressed and postage

prepaid this 16th day of March, 2010.


/S/ JASON M. BIGELOW_____
JASON M. BIGELOW
Assistant United States Attorney